NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 25-3014
_____

MICHAEL SALAWU,
                            Appellant

v.

DISTRICT DIRECTOR U.S. CITIZENSHIP AND IMMIGRATION SERVICES
PITTSBURGH; DIRECTOR U.S. CITIZENSHIP AND IMMIGRATION SERVICES;
DEPUTY DIRECTOR U.S. CITIZENSHIP AND IMMIGRATION SERVICES;
SECRETARY U.S. DEPARTMENT OF HOMELAND SECURITY; ATTORNEY
GENERAL U.S.; U.S. ATTORNEY WESTERN DISTRICT OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. Civil Action No. 2:24-cv-01424)
Magistrate Judge:  Honorable Kezia O. L. Taylor (by consent)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 7, 2026
Before:  HARDIMAN, FREEMAN, and SCIRICA, *Circuit Judges*

(Opinion filed: July 2, 2026)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Michael Salawu appeals from the District Court's judgment against him on his petition for review of the denial of his application for naturalization by the United States Citizenship and Immigration Services ("USCIS"). For the reasons that follow, we will affirm the District Court's decision.

I.

Salawu is a citizen of Ghana. In October 2008, Salawu married Ruth Ann Woodson, a United States citizen, in a civil ceremony in Ghana. However, at the time of that ceremony, Woodson was still married to another man, whom she had married in Virginia in 1981. Woodson's prior marriage remained valid until a final decree of divorce was entered in Virginia in February 2009.

In March 2009, Woodson submitted a visa petition for Salawu using Form I-130, which was approved later that year. After Salawu applied for and received an IR-1 immediate relative immigrant visa through the American embassy in Ghana, he was admitted to the U.S. as a lawful permanent resident ("LPR") in 2012.

In 2021, Salawu applied for naturalization. USCIS denied his application, determining that: (1) Salawu's marriage ceremony with Woodson occurred before her 2009 divorce, such that that he could not have legally married her in 2008; and (2) Salawu and Woodson did not subsequently remarry once Woodson's divorce was finalized in 2009. The decision thus concluded that because Salawu could not show that he was legally the spouse of a U.S. citizen at the time of his admission, he was never lawfully admitted for permanent residence and was ineligible for naturalization. Salawu

2

requested a hearing to review the decision, and USCIS reaffirmed the denial in 2024.

Through counsel, Salawu filed a petition for review in the District Court, where summary judgment was ultimately granted in favor of the Government.[1]  Salawu has timely appealed, now proceeding pro se.

## II.

The District Court had jurisdiction over Salawu's petition pursuant to 8 U.S.C. § 1421(c), and we have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  We review the District Court's decision regarding Salawu's naturalization denial de novo, applying the same standard as the District Court.  *See Savane v. Sec'y DHS*, 164 F.4th 93, 98 (3d Cir. 2026).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.

We will affirm, for substantially the reasons provided by the District Court. Salawu is eligible for naturalization only if he "has been lawfully admitted to the United States for permanent residence."  *See* 8 U.S.C. § 1429.  USCIS concluded that Salawu was not lawfully admitted for permanent residence because his admission was based on his marriage, which was not legally valid, as Woodson had not yet divorced her husband at the time of her marriage ceremony with Salawu.

---

[1]  By consent of the parties, a Magistrate Judge conducted proceedings in the District Court.  *See* 28 U.S.C. § 636(c).

Although it does not appear that Salawu withheld any information from the agency in seeking admission as an LPR or in his naturalization application, "an alien whose status has been adjusted to lawful permanent resident but who is subsequently determined in an immigration proceeding to have originally been ineligible for that status has not been 'lawfully admitted for permanent residence.'" *Gallimore v. Att'y Gen.*, 619 F.3d 216, 224-25 (3d Cir. 2010) (citation omitted). This means that even if there has been "a negligent mistake by the Government" or another circumstance that does not involve fraud, "a grant of permanent resident status does not meet the standard of 'lawful admission' if the applicant was not legally entitled to it for any reason." *Koszelnik v. Sec'y DHS*, 828 F.3d 175, 180 (3d Cir. 2016) (citation omitted).

Salawu does not contest that Woodson was still married to her former husband in 2008, and does not claim that he ever remarried Woodson after her divorce was finalized. He notes that Woodson and her former husband were already separated in 2008, but that does not change the fact that Woodson was still married before the divorce decree was entered in 2009. He also argues that he entered his marriage in good faith, but no one has argued that he or Woodson committed fraud with their applications. Rather, the only question is whether he was "legally entitled" to admission, *see Savane*, 164 F.4th at 98, and because Woodson's divorce had not yet been finalized when Salawu married Woodson, he cannot show that he was eligible for naturalization.

Salawu maintains that his green card was lawfully issued, has always been renewed without issue, and has never been revoked. However, our decision in this case is

4

limited to his naturalization appeal; his entitlement to LPR status is a separate issue from his entitlement to naturalization. *See Saliba v. Att'y Gen.*, 828 F.3d 182, 197 (3d Cir. 2016) (explaining that an individual's "right to retain his LPR status and remain in this country" is entirely separate from his "entitlement to naturalize"). And although Salawu asks us to consider a variety of equitable considerations in reviewing the agency's decision, we do not have the power to grant him citizenship based on those circumstances.[2] *See Lall v. DHS*, 117 F.4th 87, 96 (3d Cir. 2024) (explaining that "courts cannot use their equitable powers to confer citizenship" because "no matter how compelling a plaintiff's case may be, our powers do not extend to conferring citizenship in a manner contrary to the statutory requirements"); *Koszelnik*, 828 F.3d at 182 ("[E]ven if this Court did agree that barring [the petitioner] from naturalization was a harsh penalty, we lack equity powers to override statutory requirements and grant [him] citizenship.").

For these reasons, we will affirm the judgment of the District Court.

---

[2] We do not consider the other arguments Salawu presents for the first time on appeal, as he did not raise them in his counseled filings in the District Court. *See Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 88 n.12 (3d Cir. 2013).